And we'll now hear argument in Ride the Ducks Seattle versus Ride the Ducks International. Good morning, your honors. My name is Don Guthrie. I represent the appellants Ride the Ducks of Seattle in this matter. I'd like to attempt to reserve five minutes of my 20 minutes of allotted time for rebuttal. Appellant Ride the Ducks Seattle appeals the order dismissing its Consumer Protection Act claim against the appellees Ride the Ducks International, Chris Hirshend, and Hirshend Family Entertainment Corporation. There are three main errors that were committed by the district court that I'd like to address this morning, time permitting. The first is discussion of waiver. Waiver as a basis for dismissing the Consumer Protection Act claim. Second of which is dismissal of the claims against Chris Hirshend and Hirshend Family Entertainment. And finally, the dismissal of the Consumer Protection Act claims after a sua sponte finding and conclusion by the district court that Ride the Ducks Seattle could not ever be able to meet its burden to show that its Consumer Protection Act claim met the public interest element under the Consumer Protection Act. Now, this case involves quite a bit of facts and I'd like to take a step back potentially before we take steps forward and talk a little bit about where this case came from and why indemnity potentially is an issue and potentially how and why the district court erred. I'd like to note first that this case arised out of a manufacturer's, and this is Ride the Ducks International's, unfair business practices against its consumer, Ride the Ducks Seattle. Ride the Ducks International built specialty tour vehicles, amphibious tour vehicles, that it sold, marketed to the general public, and sold to Ride the Ducks of Seattle. Ride the Ducks of Seattle is the consumer and Ride the Ducks International and the other defendants are the product manufacturer under a Consumer Protection Act analysis. Now, 12 years before the tragic 2015 Aurora Bridge accident that happened here in Seattle, International first committed the first series of misconduct under the CPA that gave right to the Consumer Protection Act claims. And that began in 2003 when they began marketing and discussing selling the amphibious tour vehicles to Ride the Ducks of Seattle. That conduct persisted through at least 2015 in the form of failing to fully disclose a known and latent product defect in the front axle housing of the tour vehicles it sold to Ride the Ducks of Seattle. Years later... Counsel, if I could interrupt. I think we're familiar with the factual background. One question I'd like to ask about the application of the 2018 waiver agreement is what exactly are the damages that you're claiming in your action against Ride the Ducks International? What is the source of the damages? Is it money that you've had to pay out to the victims of the accident or is it some other loss that you've incurred? Your Honor, thank you for the question. The damages that Ride the Ducks of Seattle, the business itself incurred was primarily its loss of use of its vehicles. The accident, so first off, the latent product defect was present within the vehicles when they were originally sold in 2003. That latent product defect was never recalled or remedied by the defendant, by the appellees as was required under federal law. And at the time of the Aurora Bridge accident, that latent product defect manifests itself and caused a significant accident here in Seattle. As a direct result of that, the regulators in Washington State grounded the entire Ride the Ducks of Seattle fleet. Later, for the remainder of the 2015 year, later it lifted the restriction of operation on vehicles that were not the The other 10 vehicles, so 10 vehicles within the Ride the Ducks of Seattle fleet were unable to operate because they were of the same make and model as the one that crashed in the Aurora Bridge. And there was no recall and remedy in place as there should have been, as the appellees have admitted there should have been. Those vehicles were unable to operate on city streets. They were unable to operate – frankly, they were unable to travel on public roads. And therefore, Ride the Ducks of Seattle lost the use of those vehicles, half of its fleet. Secondly, because – Can I ask you, just on that point then, that really was a direct result of the accident on the Aurora Bridge, correct? Your Honor, I think it's a direct result of a product failure that should have been disclosed and should have been remedied as far back as 2003. Now, the 2015 accident was not the wrongful conduct that caused the Consumer Protection Act claims. The 2015 accident was essentially a notice event, an event where all parties then had to sit up and take a look and say, what caused this? Why did this occur? And in a subsequent investigation by federal and local law enforcement and federal regulators, they discovered that Ride the Ducks International, as well as the other defendants, had been derelict in their duties, not only under Washington law, but under federal law. So, Your Honor, to the extent that the accident was the notice event that caused everyone to begin digging into and, frankly, trying to ask, why does Ride the Ducks International not even have a relationship of any kind with its federal regulators? That's – I mean, that's the role that the accident played in this case. The accident itself was not the wrongful conduct by Ride the Ducks International under a Consumer Protection Act analysis. I apologize, Your Honor. So, pivoting back to damages, there was the loss of use of the vehicles, but there was also significant loss of consumer goodwill and reputation within the Seattle community. That was a direct result of the fact that, unbeknownst to Ride the Ducks of Seattle, they've been using vehicles that should have been under a recall notice since, again, as early as 2003. The facts show, and it's in the record, that Ride the Ducks International had front axle housing failures before the time of sale, so before they began negotiating and before they entered into a contract to sell vehicles to Ride the Ducks of Seattle, as well as having a failure with the exact same failure mode in 2013. Now, we know that that occurred because they issued a notice, what's called a service bulletin, which gave generalized descriptions of a product of the failure that may occur, but contains none of the required language, nor remedies, nor an approved remedy that's required under federal law. So, we know that they were aware of and concealed the true nature of this defect. And, again, the defect made manifest in the 2015 accident, but that really is only a notice event. It's an event that gave the parties notice and gave Seattle notice, gave regulators notice that something was amiss, and as a result of that investigation, Ride the Ducks of Seattle was unable to use its fleet. It was unable to maintain its goodwill and its patronage, and that's all as a result of the business misconduct. Just to cut to the chase, is it your position that the waiver would leave still standing these damages claims for loss of the use of the vehicles and also the consumer goodwill? Yes, Your Honor. Okay. Absolutely. And then let me also ask you, Ride the Ducks Seattle moved for summary judgment on the Consumer Protection Act claim of International, but am I correct that there was not a corresponding motion for summary judgment against Seattle Ride the Ducks by International with respect to the Consumer Protection Act claim? I see Mr. Singla shaking his head. There were cross motions for summary judgment, Your Honor. I understand there were cross motions, but what did they encompass? My memory, and I think Mr. Singla can speak best to his motion, but we moved to dismiss Consumer Protection Act claims that Ride the Ducks International filed against Ride the Ducks of Seattle, its product consumer, as well as the CEO in his individual capacity, Mr. Tracy. Now, I'll take the opportunity now to note that Mr. Tracy, the judgment dismissing the claim against Mr. Tracy was not appealed and Mr. Tracy is not a party to this appeal. So any remedy that issues from the court's decision should not include that cause of action being reinvigorated against Mr. Tracy. But I'm not sure we've completed all the summary judgment motions. And I'll again ask your colleague, but Ride the Ducks International, there were cross motions for summary judgment. Was Ride the Ducks International cross motion on the waiver or did it challenge the Consumer Protection Act claim of Ride the Ducks Seattle? I think I can, if I can try to answer the question, the theory that Ride the Ducks International pursued and was briefed was one of waiver. They alleged that the claim, the Consumer Protection Act claim alleged by Ride the Ducks of Seattle was waived by this mutual waiver and release of claims of indemnification. So, I mean, I guess that brings to a fore. You argue that you never really had a chance, for example, to argue per se violations of the Consumer Protection Act because of the posture of summary judgment. But was that not on the table as part of International's motion for summary judgment against Seattle Ride the Ducks? No, Your Honor. I don't believe it was. The motion that was brought by Ride the Ducks International encompassed only waiver. They did not allege that we could, and there was no briefing alleging that we could not meet our other burdens under the, essentially the element analysis of the Consumer Protection Act. And had they done so, we would have briefed issues relating to per se violations of the automobile, the Auto Dealer Practices Act, which Ride the Ducks International notes that we brought up only for the first time in our opening brief. But, again, Your Honor, that's because that was never an issue that was before us in the trial court. Is there any causation between the damages you just laid out and this potential claim under the per se violation? Where's the causal link? Thank you, Your Honor. One of the requirements under, again, it's our position that we should be allowed to present evidence on this because, again, since this was just a secondary rationale that the district court raised to Esfanti, we did not have an opportunity to raise evidence and present evidence. But under the per se analysis, Revised Code of Washington 4670.310, I'm sorry, 4670.101, Subsection 2, Subsection K, sets forth a requirement for auto dealers and auto manufacturers not only registered within Washington, which Ride the Ducks International and the other appellees were not, requires that they meet federal standards applicable to automobile manufacturers. There is the consent order, which I'll direct the court's attention to. It's at Excerpts of Record 400, which outlines, I think, two or three pages of admissions of failures to adhere to federal automobile manufacturer law. So those failures to recall, remedy, notify Ride the Ducks of Seattle of the latent product defect that not only existed at the time of sale, but also had failed in the same failure mode as it did on the Aurora Bridge in 2013, failure to disclose those and go through the proper federally mandated channels led to the loss of use of the Ride the Ducks Seattle vehicles after the accident. Had the recall and remedy been implemented in 2003 before the accident, none of this would have occurred. Had the recall and remedy been disseminated after the time of sale but before the accident, it would have been addressed. So that's the nexus under the consumer, essentially the public interest per se analysis of the Consumer Protection Act, Your Honor. I noticed in your explanation of what your claim is so far, you haven't mentioned the amounts that you had to pay out in tort judgments to the victim of the accident. Do you agree that even if it's under the rubric of the CPA, a claim trying to recover for that would be barred by the waiver? No, Your Honor. I don't believe I'd agree that it's barred under the waiver. I believe that Mr. Singla and the appellees has brought a case. In full disclosure, I believe it's tossed, and I assume Mr. Singla will reference it, that likely precludes us pursuing those. But I think both parties agree that that issue was not squarely in front of the court and would benefit from additional briefing. But I think it's sufficient to say that there are damages that are separate and distinct from the damages that could be at issue in tossed, which is the damages that were not essentially third-party damages that we were obligated to pay, we being all of the duck parties here present in this case. But the damage is specific to Ride the Ducks of Seattle. The tort plaintiffs, again, the underlying tort claims and the tort plaintiffs, they had their opportunity to talk about and to allege claims of how they were injured and how they were damaged by the conduct of Ride the Ducks International and the other defendants. Ride the Ducks of Seattle has not. This is Ride the Ducks of Seattle to say, look, we were harmed by the conduct of the appellees in this case. We were subject to business misconduct that is prohibited under the Consumer Protection Act that led directly to damages that were separate and distinct of those tort remedies and those tort judgments that we ultimately, between the two duck defendants, were able to settle and resolve nearly all of. I've perhaps lost track of the court's question, but if I address it, I will continue. Can I just say I'm not quite sure what the answer is after hearing that. It seemed to me the answer to Judge Miller's question would be yes, that these tort damages of the however many millions paid out, that those are encompassed within the waiver. But then you said, well, yes, but no. So I'm just not 100% sure of your position. Your Honor, I think that our position is there are damages distinct from those underlying tort damages that Ride the Ducks International incurred. I believe that case law likely supports the defendant's position that we are precluded from pursuing those damages that were paid out by insurance companies to the underlying tort defendants. Now, if there was an excess judgment that Ride the Ducks of Seattle or Ride the Ducks International had to pay, I do not believe that that would be encompassed under the applicable law and tossed. But the monies that were paid out by insurers, I don't believe that that's something that we can pursue. Did you want to save your remaining time? I think that Judge Beatty has a question first, but then you may want to save your remaining time. Yes, Your Honor. Thank you. Okay, so as I understand your last answer when you said that Ride the Ducks Seattle could still pursue or claim for any excess judgment, you're reading the waiver to only apply to the $117 million that were expended on the tort claims and covered by insurance? But beyond that, nothing's covered by the waiver beyond that?  No, Your Honor. I don't believe that the waiver waives our claim to pursue those damages. I believe applicable case law under tossed would preclude us from pursuing those damages. The waiver is a waiver not of a general position, and I think it's briefed extensively, is that the waiver only waives indemnity claims against the two defendants. And those indemnity claims are limited by the scope of the indemnity that's provided within the 2003 agreement. That scope does not include the mutual waiver and release of claims of indemnification is at excerpts of Record 535. That does not include business misconduct. It does not include the Consumer Protection Act claim. And so it's our position that this was not waived, that the waiver was only of indemnity claims related to the underlying tort litigation and not of conduct that existed or began in 2003 that directly harmed Ride the Ducks of Seattle as opposed to third parties who may have claims against the two top defendants. With that, I believe I'll reserve my two minutes. You may. Thank you. Thank you. Thank you and good morning, Your Honor. Sumi Ersingala on behalf of Ride the Ducks International, Chris Hirschen, and Hirschen Family Entertainment Corporation, otherwise referred to as HFEC. If it pleases the court, I'm going to differentiate because Ride the Ducks is in both the names in International and Seattle, me representing International, Mr. Guthrie representing Seattle. Your Honor, in this case, my clients request the court to affirm the district court's decision. And International will discuss this case in the following order. One, discuss the waiver and release agreement and the broad and unequivocal release of any and all claims that include this particular claim. Number two, the agreement also included the release of Mr. Hirschen and HFEC in the attached term sheets that were not only incorporated by reference into the waiver and release as part of a valuable consideration, but were also physically attached to the waiver and release themselves. Three, should the court find that the broad language of the waiver and release did not preclude the claim, the CPA claim stood will not be a colorable claim under the applicable case law, both in Washington State and also in the federal districts. And finally, in our cross appeal, should the court deem it that Judge Peckman's order was not appropriate, we're asking for the appeal to essentially reset all the parties to where they were prior to the dismissal. And that's why to preserve that right, my clients had cross appealed it, because what Judge Peckman essentially did was dismiss all parties of all claims. Moving to the first point of the waiver and release agreement, before we even address the CPA claim, your honors, this is a case about first interpreting settlement agreement and what was encompassed in that settlement agreement in 2018. When reviewing those settlement agreement, Washington law for decades has stood for the principles that the law favors the private settlement of disputes, releases, therefore giving great weight to promote the finality of the out of court settlements. And that's where we are. This was supposed to be the final settlement between the parties so that parties would not sue each other and get away from each other. And that was on the waiver and release. And number two, there's a presumption that a general settlement agreement embraces all existing claims of the parties arising from an underlying incident. This means the provision should be interpreted to preclude additional causes of actions, not to allow causes of actions that haven't been specifically carved out. And that's where I would like to focus a little bit on just the agreements themselves and what the language of those agreements said. Paragraph number five was very clear, and it was exceptionally broad in the waiver and release agreement. Both parties waived and released all rights and claims against each other to be protected, defended, indemnified, or held harmless from any and all claims, demands, actions, or causes of actions from or relating in any way to the accident of 2015. It was that broad. Anything that could do anything in any way that related to the accident, parties that agreed that they were waiving any and all claims against each other. Well, but counsel, that's where I'm a little bit confused, I think, by your position. Because, you know, I think what you've said makes sense with respect to, you know, as my colloquy with your colleague got at, that makes sense with respect to the money that they had to pay out to satisfy third parties. But with respect to the damages that they're claiming, they suffered directly. I guess I don't see how that's a claim to be protected, defended, indemnified from a claim arising out of the accident. It's just a claim arising out of the accident. So what is that phrase in the middle of paragraph five doing if that kind of direct claim is excluded by the waiver? Your Honor, the claim in the middle of the court is asking, what does the terms protected, defended, indemnified and held harmless for many and all claims? It is the general broad encompassing of anything that could be ever contemplated or any causes of actions that could ever be contemplating for being protected, defended or indemnified. Anything that could be complicated that arises or relates in any possible way to the accident. And the reason that's, if I see, Judge Miller, you may have a follow up question. Well, I mean, I guess, I mean, there's two questions which you can take in whichever order you want. One, why include that at all? You could just say release any rights and claims and then skip to arising from the accident. And then more specifically, I don't see how they're asserting a claim to be protected, defended, indemnified from a claim. What is the claim from which they're seeking to be protected or indemnified? There isn't one. There's just their claim. So those are my questions. Well, Your Honor, I'll answer the first question. The reason this language is included is to to provide and to provide notice to all the parties that it is as broad as it can be and is as encompassing. It can be to protect, defend and indemnify or do anything that would arise. To answer your second question is what are they protecting or defending themselves for? It's if reading the language holistically, which is waiving and releasing all rights and claims against each other. It each other to be protected, defended and indemnified. So it's the claims that are working against each other. So basically what this was was to make sure that neither party could sue each other in any way for any claims that were arising out of this incident. And that's why the second sentence is included in there is to say not only are we agreeing that neither party can sue each other for any claims arising out of the incident. We're also including section four point six. Oh, that was left out in the in the termination agreement to also be included. This is where your honors, the definition of indemnity becomes important and the Atari case becomes important as well because it's not under this circuits holdings and also Washington state case laws holdings. The definition of indemnity or indemnified does not necessarily only apply to third parties. It also includes first party claims. In fact, what this circuit and the D.C. circuit has said is that you need to do a step further if you are trying to indemnify against only third parties. You need to be specific about that. Or if you're carving out first parties, you need to be specific about that. And that's not what happened here. There was only one carve out in this case, which was a carve out for contributions. So let me ask you then, as your colleague defines it, there is both pre accident and post accident damages. So how does the waiver, which is pegged to the 2015 accident, how would it be read to exclude claims that they talk about as pre accident, such as the vehicle registration and the alleged violation of the various federal and state vehicle and manufacturing laws? In two fold, your honor, the answer to that question. The first is the language itself in section five of the waiver is so broad that it's a cause of action arising from or related in any way to the accident. So it's that broad that it encompasses not only what was happening before the accident to the accident, but whatever happened because of the accident. And I would posit if if if Seattle wants to stick with this, it's theory now. It's not what was pled in the complaint, which was the operative complaint in front of Judge Peckman. And there I will guide the court's attention to paragraphs three point one one to three point one five. In those paragraphs, when when Seattle was laying out its CPA claim, its claim of deceptive and acts, it was specifically relating it back to the accident. In section three point one to paragraph three point one to what Seattle alleged was that my clients failed to properly and completely implement the protocols and identify designs, affect remedies and ensure those remedies and disseminated and implemented consistent, consistent with industry standards and federal law. Specifically the defect that led to the September 2015 accident. It is it is in the complaint itself where they had attached everything to the accident and all the damages that Mr. Guthrie is now telling the court that they're going to be claiming are arising out of the accident. And that's why this waiver agreement is so poignant and specific on this instance. And it's also supported by by law, not only in Washington state, but also from the circuit. So if we were to read that waiver as leaving some leeway, just hypothetically for a Consumer Protection Act claim. It seemed to me that your cross motion for summary judgment was not really a cross motion to dismiss Seattle's Consumer Protection claim. Am I wrong about that? Your Honor, respectfully, there's a nuanced answer. The answer is our motion to Judge Peckman was to dismiss international CPA claim. The basis and the focus of our motion to dismiss the CPA claim was because of the waiver provisions in the in the agreement. That was our basis. The basis of Seattle's motion, on the other hand, talked more and was in depth talking about the CPA claim and also the indemnity claim. If the court reviews the colloquy or the proceedings, parties extensively discussed and had a extensive discussion about the CPA claim, about the contours of the CPA claim and why the CPA claim wouldn't apply. I read all that, but I'm still kind of lacking because you move to dismiss the CPA claim because it's all encompassed in the waiver. So you're either in or you're out and you say everything is in the waiver. So if the court were to disagree that everything is not in the waiver, what I thought was lacking was really a basis for the summary judgment motion on the basis that there really is no viable CPA claim. Even though there were discussions about, you know, Hangman Ridge and all the criteria, I didn't really see international claiming in its motion for summary judgment that there was no CPA claim. I'm sorry, I may be lost on the last question. There was no CPA claim by international against Seattle? Right. I mean, international moves for summary judgment against Seattle, correct? Correct. And international says CPA claim should be dismissed because the waiver kicks it out, correct? Correct. But what I didn't see was the alternate ground that if the waiver doesn't kick it out, there is no CPA claim. That was not... Out of Seattle. That was not specifically briefed in international's motion for summary judgment. International's motion for summary judgment stood... Right. What Judge Peckman did was two things. One, Judge Peckman agreed with international as a matter of law that the waiver claim and the definition of indemnity encompass the CPA claim and dismiss the claim on that basis first. And then on second, Judge Peckman did an analysis of the CPA claim itself. And quite frankly, that analysis has also subsequently been followed by Judge Martinez in a subsequent case last year. The same, almost the exact same analysis in another case where Boeing was involved to uphold that the Consumer Protection Act claim for such transactions did not apply. Right. I'm going to move on a little bit to the reason that the Herschen Family Corporation and my client Chris Herschen was also included in the claim. That was one of the other issues that was brought up by Mr. Guthrie. I know we didn't have a chance to have a colloquy on that. The reason that those parties, the officers and owners and managers were included was because of the concept that is well-established case law in Washington that documents are incorporated by reference. And that's the Satomi case. That if a document is referenced in the contract, it's incorporated into the contract. Here, there was something that happened one step further, which was not only was the document incorporated into the contract, but it was also attached as part of the contract itself. And it was for good and valuable consideration. And it's in those term sheets on paragraph two that applied to all officers and owners and managers. And if we take a step back and look at it logically, it makes sense. In 2018, Mr. Tracy was personally a defendant in a whole host of personal injury lawsuits. And Mr. Herschen was on the other side for International, Mr. Tracy for Seattle. When those two principals signed the waiver and release agreement, it would only make sense that they would understand that they were also waiving personal liability to themselves along with the companies that they own, Seattle and International. It wouldn't make sense that a sophisticated individual like Mr. Tracy or Mr. Herschen would continue to assume personal liability, but then waive the liability as it would apply to companies that eventually are now in bankruptcy. Moving on to my third point, Your Honor, which is the CPA claim itself. And we believe that in this case, I want to address a little bit about the vehicle manufacturers and the revised codes of Washington, RCW 467190. On page 19 of Seattle's reply brief, they are very clear that they are not pursuing a claim under this statute. That is what they had said. So that is they have not pleaded it in the complaint. They have not pursued it under the statute. However, the statute that Mr. Guthrie just cited to it, what the operative term, what the operative penalty or the recourse for that statute was, if there was a violation of a federal regulation, the director would suspend the license of a manufacturer. So the contemplation in that specific RCW was you would have a manufacturer, the manufacturer would have a license. And if there was a subsequent violation of a federal standard, that license would be suspended. So it begs the question, what happens if a manufacturer does not have a license and then there is a violation of the federal standard? Well, then RCW 46170190 would apply, which gives parties a civil cause of action for such violations. But that civil cause of action has a one-year statute of limitations. This case, even if Seattle was to pursue that, this case would be outside of those statute of limitations as far as the violation was concerned because the violation was known to Seattle if Seattle wants to claim as of 2016 when the consent decree was entered into. However, this case was not filed until 2019. So this idea of a vehicle manufacturer per se violation is something that they have conceded that they're not pleading and quite frankly would not be a platform or a springboard into a CPA violation. Because it's not a platform or springboard into a CPA violation, then we are left with the analysis that the analysis that Judge Peckman did on the CPA violation and relying upon the Behnke decision in Behnke versus Ahrens. And in that, what Judge Peckman was trying to explain was that this is something that is different from what would be for an ordinary or reasonable consumer because of the transaction between the two parties. And this is where I'd like to point the court to a recent case. Well, not so recent since we're in the end of 2021. This case was decided by Judge Tyler, Commissioner Tyler and Judge Martinez adopted the CPA analysis from Judge Tyler and that case is Wilmington Trust Company versus Boeing Company. It is 2020 WL8745857. We've cited that case in our response brief as well. The reason that this case is poignant, Your Honor, is in that case, they were purchasers of about 9 to 10 Boeing Air 737 Maxes that had filed a lawsuit against Boeing because the 737 Max had been grounded because of the horrific accidents that had happened and the crashes that happened that resulted in fatalities. And the allegations there were very similar to here that Boeing had failed to inform the federal government of what it was required. In that analysis, like what Judge Peckman did here, Judge Martinez agreed with was that the transaction between these two parties was essentially a closed transaction or was a transaction of such a nature that it was not something that would be repeatable or would not be something that would be accessible for a reasonable and ordinary consumer. If we look at that same analysis because we're out of the vehicle manufacturer here, that is why the CPA claim on its own would not stand. And that's why we believe that Judge Peckman's decision on this case was well reasoned and well founded and we would ask the court to affirm Judge Peckman's decision in this matter. If the court doesn't have any more questions, I'm out of time. Thank you. And your honors, I'll note that I got kicked off of the conference call and could not hear about a minute of Mr. Singler's arguments. Is the court able to hear me from my computer speaker? I'm sorry? Is the court able to hear me from my computer speaker? My audio? Okay, yeah, we can hear you. It's not perfectly clear, but I think if you lean in, we can. I will lean in and speak concisely. First off, I would like to address the Boeing case. The reasoning in that case and the reason why the district court held the way it did is if you go back and look, the court found that the two parties to that interaction were both sophisticated parties with regards to the issues in that case, which were staffing, qualifications of pilots, and maintenance. In this case, only one of the parties was sophisticated as to the issues of manufacturing, vehicle design, and vehicle engineering, and that was Ride the Ducks International. These were not parties that were dealing on an equal footing as they were in the Boeing case that Mr. Singler cited. Second, Mr. Singler talks about the per se violation of the Auto Dealer Practices Act. We're not seeking remedy under that act. They all but admitted in their oral argument that they violated that act. And that act says any violation of that act, of the Auto Dealer Practices Act, constitutes a per se violation of the public interest in a Consumer Protection Act case. But you're not claiming any damages based on that? No, Your Honor, we're not. Why are we talking about it? Because that demonstrates they violated, they impacted the public interest. Because a violation of that statute constitutes a violation. You can violate all kinds of statutes, but if there's no causal connection between that and the damages, you don't have a Consumer Protection Act claim. You might have a bad person, you might have somebody who should be called to the carpet on public interest, but you don't have a claim if you don't have a connection, right? Correct, Your Honor, except that part of the violation that they committed of that act, which again, we're not seeking remedy for, but we're using that as evidence to show a per se impact of the public interest, was their failure to follow federal mandated recall and remedy procedures. And finally, if I could answer a question that Judge Miller posed to Mr. Singler, which is, why is that particular indemnity style language in the indemnity waiver? That language tracks perfectly with the language contained within Section 4.60, the indemnification section of the 2003 agreement. The reason that's in there, is it because it relates directly to the tort claims that are referenced in the term sheets and the other accompanying documents with that indemnity waiver. I believe I'm a minute over my time. I apologize for my technological difficulties. If the court has no more questions, I believe the case is ready to be submitted. No, no problem. I don't think that the technological difficulties impacted at all our ability to get your argument on target. So thank you both for your argument this morning. Ride the Ducks Seattle versus Ride the Ducks International is now submitted and we're adjourned for the morning.
judges: McKEOWN, MILLER, BADE